RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/3/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 10-00351 |
| -vs- | JUDGE DRELL |
| THOMAS STEVEN SANDERS | MAGISTRATE JUDGE KIRK |

---

### RULING

Before the Court is a Motion to Dismiss "Notice of Special Findings" in Superseding Indictment and to Strike Notice of Intent to Seek the Death Penalty (Doc. 156) filed by Defendant, Thomas Steven Sanders. For the following reasons, Defendant's motion will be **DENIED**.

I.   Background

On January 26, 2011, a grand jury returned a two-count superseding indictment charging Defendant with interstate kidnapping pursuant to 18 U.S.C. § 1201(a)(1), and carrying/using a firearm in relation to a crime of violence and causing the death of another through the use of a firearm pursuant to 18 U.S.C. § 924(c)(1)(A) and (j)(1). (Doc. 25). The superceding indictment also includes a Notice of Special Findings listing four allegations of intent under 18 U.S.C. § 3591(a)(2)(A)-(D) and three statutory aggravating factors under § 3592 that make Defendant eligible for the death penalty: (1) death during the commission of another crime, 18 U.S.C. § 3592(c)(1); (2) substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); and (3) vulnerability of the victim, 18 U.S.C. § 3592(c)(11). On August 1, 2012, the United States of America ("Government") filed a

Notice of Intent to Seek the Death Penalty pursuant to the requirements of 18 U.S.C. § 3593(a) ("§ 3593(a) Notice"). (Doc. 73). The § 3593(a) Notice includes both the intent allegations and the statutory aggravating factors alleged in the superseding indictment, and the non-statutory aggravating factor of victim impact evidence under 18 U.S.C. § 3592(c).[1]

On March 17, 2014, Defendant filed the instant Motion to Dismiss "Notice of Special Findings" in Superseding Indictment and to Strike Notice of Intent to Seek the Death Penalty (Doc. 156), challenging the constitutionality of the Federal Death Penalty Act of 1994, 18 U.S.C. § 3591, *et seq.* ("FDPA"), and the federal death penalty on the following grounds: (1) under the FDPA, the death penalty is imposed in an arbitrary, capricious, and irrational manner in violation of the Eighth Amendment, and in a discriminatory manner in violation of the Fifth and Eighth Amendments; (2) the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584 (2002), renders the FDPA unconstitutional because the statute does not require a grand jury indictment of aggravating factors; (3) the superseding indictment violates the Fifth Amendment; (4) the FDPA's sentencing scheme is incomprehensible such that it deprives the jury of the ability to make a reasoned choice between a death sentence and a life sentence; (5) the risk of executing innocent people renders the death penalty unconstitutional; and (6) the death penalty is, under all circumstances, cruel and unusual punishment and a denial of due process. While some of Defendant's claims appear to be in criticism of the death

---

[1] Upon the Government's request, the Court ordered that the non-statutory aggravating factor of future dangerousness of the Defendant, 18 U.S.C. § 3593(a)(2), be withdrawn from the § 3593(a) Notice. (Doc. 195).

penalty sentence itself, rather than the FDPA, this does not affect our analysis or ultimate conclusion. For purposes of this ruling, the constitutionality of the federal death penalty and its enabling Act (FDPA) are intrinsically tied and are considered together.

All appropriate responsive briefing has been filed (Doc. 161), and disposition of the motion is now appropriate.[2] After considering the evidence and the pleadings, the Court rules as follows:

II. <u>Law and Analysis</u>

  A.   Arbitrary, Capricious, and Irrational Application

Defendant first claims that the death penalty is imposed in an arbitrary, capricious, and irrational manner in violation of the Eighth Amendment. In particular, he asserts that less than 3% of death-eligible federal defendants are actually sentenced to death, and that there is no consistency, predictability, or meaningful basis for distinguishing the cases in which the federal death penalty is sought and imposed, from those in which defendants are allowed to plead out.

Defendant relies primarily on three Supreme Court decisions to establish his Eighth Amendment argument. See <u>Roper v. Simmons</u>, 543 U.S. 551, 567 (2005); <u>Atkins v. Virginia</u>, 536 U.S. 304, 316 (2002); and <u>Furman v. Georgia</u>, 408 U.S. 238 (1972). But, as the Government correctly notes, the Supreme Court in <u>Roper</u> and <u>Atkins</u> did not consider the infrequency of the death penalty's imposition as evidence of its arbitrary and capricious application. The Court instead considered it as evidence that "a national

---

[2] In a telephone conference with counsel for both parties on June 6, 2014, the Court instructed counsel to notify the Court via written letter if either party desired oral argument on the instant motion. Given that neither party has submitted a written request for oral argument per the Court's instructions, we proceed based on the briefing and record presently before us.

3

consensus has developed against" capital punishment of juvenile or mentally impaired defendants. Atkins, 536 U.S. at 316. See also Roper, 543 U.S. at 567–68. Furthermore, and contrary to Defendant's assertion, Furman and its progeny are concerned with the *manner* in which the death penalty is sought and imposed, rather than the frequency of its imposition: "Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 188–89 (1976).

In Gregg, the Supreme Court upheld a Georgia statute with a capital-sentencing scheme much like that of the FDPA. See id. at 196. As the Supreme Court explained:

> [Georgia's capital-sentencing] procedures require the jury to consider the circumstances of the crime and the criminal before it recommends sentence. No longer can a Georgia jury do as Furman's jury did: reach a finding of the defendant's guilt and then, without guidance or direction, decide whether he should live or die. Instead, the jury's attention is directed to the specific circumstances of the crime . . . [and] on the characteristics of the person who committed the crime . . . As a result, while some jury discretion [s]till exists, the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory application.

Id. at 197–98 (internal quotations and citation omitted). Likewise, the Supreme Court subsequently held that

> our decisions in Furman [and Gregg] . . . establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime. So long as a state system satisfies these requirements, our precedents establish that a State *enjoys a range of discretion in imposing the death penalty*, including the manner in which aggravating and mitigating circumstances are to be weighed.

4

Kansas v. Marsh, 548 U.S. 163, 173–74 (2006) (emphasis added) (internal citations omitted).

Here, Defendant cites a number of federal capital cases in which juries reached varying results. However, Defendant's showing is insufficient to substantiate the FDPA's failure to provide for a sufficiently narrow class of death-eligible defendants or an individual sentencing determination. Indeed, the Supreme Court has observed that

> [t]he Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt. If sufficient evidence to link a suspect to a crime cannot be found, he will not be charged. The capability of the responsible law enforcement agency can vary widely. Also, the strength of the available evidence remains a variable throughout the criminal justice process and may influence a prosecutor's decision to offer a plea bargain or to go to trial. Witness availability, credibility, and memory also influence the results of prosecutions. Finally, sentencing in state courts is generally discretionary, so a defendant's ultimate sentence necessarily will vary according to the judgment of the sentencing authority. The foregoing factors necessarily exist in varying degrees throughout our criminal justice system.

McCleskey v. Kemp, 481 U.S. 279, 307, n.28 (1987).

For these reasons, we find that Defendant's first claimed basis for relief is without merit.

### B. Discrimination Based on Race and Geography

Defendant also asserts that the death penalty is imposed in a discriminatory manner in violation of the Fifth and Eighth Amendments.[3] First, he contends that the

---

[3] With respect to this contention, Defendant raises both a Fifth Amendment equal protection and an Eighth Amendment cruel and unusual punishment claim of discrimination:
  The Cruel and Unusual Punishment Clause of the Eighth Amendment imposes a constitutional prohibition against racial discrimination in the use of the death penalty that is at least as strict as the general proscription of racial discrimination

5

"vast majority" of federal capital defendants are minorities, and that defendants who kill whites are more likely to face and to actually receive a death-penalty sentence than those who kill minorities. (Doc. 159-1 at p. 15). Second, he makes a statistical argument that nearly two-thirds of federal death verdicts are sought and returned in the south. However, the Government correctly notes that Defendant has not alleged, much less offered proof of, purposeful discrimination in *this* case. Instead, he relies solely on law review articles and general statistical data that purport to show a racial and geographical bias in capital-sentencing decisions *generally*, which is insufficient to sustain his burden of proof under the Fifth or Eighth Amendments.

We agree with the Government's argument, and in particular its reliance on McCleskey v. Kemp, 481 U.S. 279, in which the Supreme Court held a statistical study suggesting race-based disparities in the administration of a state death-penalty scheme was insufficient to establish an equal protection or Eighth Amendment violation.[4] As the Court explained:

> A defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination." Whitus v. Georgia, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599 (1967). A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Thus, to prevail under the Equal Protection Clause, [a defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose.

---

in the (implicit) equal protection clause of the Fifth Amendment... Additionally, a death penalty that operates on an arbitrary basis is unconstitutional under both the Eighth Amendment and the due process and equal protection clauses of the Constitution. See Bush v. Gore, 531 U.S. 98 (2000).
(Defendant's Memorandum in Support, Doc. 159-1 at pp. 16–17).

[4] McCleskey, a black man convicted of murdering a white police officer, asserted claims under the Eighth and Fourteenth Amendments.

Id. at 292 (internal footnotes omitted). However, the Court found the statistical evidence "clearly insufficient to support an inference" of discriminatory intent based on (1) the nature of the capital-sentencing decision, which requires the jury to consider "innumerable factors that vary according to the characteristics of the individual defendant and the facts of the particular capital offense," and (2) the necessity of discretionary judgment to the criminal justice system. Id. at 294, 297. Indeed, the Court stated that, "[b]ecause discretion is essential to the criminal justice process, we would demand *exceptionally clear proof* before we would infer that the discretion has been abused." Id. at 297. (emphasis added).

The McCleskey Court further held that the study did not "demonstrate a constitutionally significant risk of racial bias affecting" the capital-sentencing scheme, and thus was insufficient to prove an Eighth Amendment violation. Id. at. 313. In so ruling, the Court noted that

> [a]pparent disparities in sentencing are an inevitable part of our criminal justice system. . . [O]ur consistent rule has been that constitutional guarantees are met when "the mode for determining guilt or punishment itself has been surrounded with safeguards to make it as fair as possible." [citation omitted] Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious.

Id. at 312–13 (internal footnotes omitted). Based on McCleskey, we find that Defendant's second contention is also without merit.

### C. Unconstitutional Under *Ring v. Arizona*

Next, Defendant argues that Ring v. Arizona, 536 U.S. 584, 609 (2002) (holding that where an aggravating factor renders a defendant eligible for the death penalty, it is "the

functional equivalent of an element of a greater offense" and must be proven to a jury beyond a reasonable doubt), and its Fifth Amendment progeny[5] render the FDPA unconstitutional because the statute does not require a grand jury indictment of aggravating factors which, if proven, make him eligible for a sentence of death. Rather, the FDPA "explicitly and unambiguously reserves the selection and notice of aggravating factors to the exclusive discretion of the prosecutor." (Doc. 159-1 at p. 19).

As Defendant concedes, however, the Fifth Circuit has squarely rejected this contention:

> Although [defendant] is correct to point out that nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment, he fails to note that there is nothing in that law inhibiting such a charge. The government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a § 3593(a) notice of intention to seek the death penalty). As a result, the statute is not facially unconstitutional.

U.S. v. Robinson, 367 F.3d 278, 290 (5th Cir. 2004). Furthermore, the superseding indictment in this case comports with the requirements of Ring because it includes a Notice of Special Findings by the grand jury alleging a requisite mental state and three statutory aggravating factors. We therefore reject Defendant's argument that the FDPA is unconstitutional as a result of Ring.

---

[5] According to the Fifth Circuit,
> Ring's Sixth Amendment holding applies with equal force in the context of a Fifth Amendment Indictment Clause challenge, even though the Supreme Court has yet to hold as much in a capital case. As a result, the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its failure to do so in this case is constitutional error.

U.S. v. Robinson, 367 F.3d 278, 284 (5th Cir. 2004).

D.  Sufficiency of the Indictment

In his fourth contention, Defendant argues that the superseding indictment violates the Fifth Amendment because it does not allege any non-statutory aggravating factors or that the aggravating factors sufficiently outweigh the mitigating factors to justify a sentence of death, and does not indicate that the grand jury intended to return an indictment charging a capital offense.

To be sufficient, an indictment must allege the material elements of the charged offense. Hamling v. U.S., 418 U.S. 87, 117 (1974) (citations omitted). The purpose of this requirement is "to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment." U.S. v. Henry, 288 F.3d 657, 660 (5th Cir. 2002) (quoting U.S. v. Cabrera–Teran, 168 F.3d 141, 143 (5th Cir. 1999)). However, the Fifth Circuit has soundly rejected Defendant's argument that non-statutory aggravating factors must be included in an indictment:

> Only a factor that renders the defendant eligible for the death penalty must be charged in the indictment. Significantly, non-statutory aggravating factors do not render a criminal defendant eligible for the death penalty. As the Supreme Court explained in Jones v. United States, the findings of the statutory factors of intent and aggravation specified in the FDPA comprise the eligibility phase of death sentencing. As such, only the FDPA's statutory factors expose a criminal defendant to the death penalty. Alone, non-statutory aggravating factors cannot make a defendant eligible for death sentence. This is because the jury proceeds to consider non-statutory aggravating factors only *after* the defendant is determined to be death-eligible. Accordingly, it [is] neither constitutional nor statutory error for the non-statutory aggravating factors to be omitted from the indictment.

U.S. v. Bourgeois, 423 F.3d 501, 507–08 (5th Cir. 2005) (emphasis in original).

The reasoning in <u>Bourgeois</u> could easily be extended to the indictment's failure to allege that the aggravating factors sufficiently outweigh the mitigating factors to impose a sentence of death.[6] Indeed, other district courts have held that the process of weighing aggravating and mitigating factors is not an element of the offense and therefore need not be alleged in the indictment. <u>See, e.g.</u>, <u>U.S. v. Galan</u>, 2007 WL 2902908, at *4 (N.D. Ohio Oct. 2, 2007); <u>U.S. v. Natson</u>, 444 F. Supp. 2d 1296, 1305 (M.D. Ga. 2006). <u>See also</u> <u>U.S. v. Purkey</u>, 428 F.3d 738, 750 (8th Cir. 2005) ("[I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause.").

Finally, Defendant cites absolutely no authority to support his contention that the Fifth Amendment requires a grand jury to be aware its special findings could result in the imposition of the death penalty. Similar arguments have been rejected by a number of courts, and we find their reasoning persuasive. <u>See, e.g.</u>, <u>U.S. v. Savage</u>, 2013 WL 1934531, at *7 (E.D. Penn. May 10, 2013) (rejecting similar Fifth Amendment claim after noting that the defendants' "argument reveals their misunderstanding of the role of the grand jury"); <u>U.S. v. Williams</u>, 2013 WL 1335599, at *15 (M.D. Pa. Mar. 29, 2013) (holding

---

[6] As the Supreme Court has explained:
> In death-eligible homicide cases, the [FDPA] instructs, the jury must respond *sequentially to three inquiries*; imposition of the death penalty requires unanimity on each of the three. First, the jury determines whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity. <u>See</u> 18 U.S.C. § 3591(a)(2). Second, the jury decides which, if any, of the Government-proposed aggravating factors, statutory and nonstatutory, were proved beyond a reasonable doubt. <u>See</u> § 3593(d). *Third, if the jury finds at least one of the statutory aggravators proposed by the Government, the jury then determines whether the aggravating factors "sufficiently outweigh" the mitigating factors to warrant a death sentence*, or, absent mitigating factors, whether the aggravators alone warrant that sentence. § 3593(e).

<u>Jones v. U.S.</u>, 527 U.S. 373, 407–08 (1999) (emphasis added).

that the grand jury "was able to fulfill its constitutional role in determining whether probable cause existed to charge defendant with the crimes in the indictment without consideration of the possible sentences"); U.S. v. Troya, 2008 WL 4327004, at *7–8 (S.D. Fla. Sept. 22, 2008) (finding no requirement that the grand jury be informed as to the ultimate punishment); Natson, 444 F. Supp. 2d at 1305 (finding that "since neither the Fifth or Sixth Amendments required the Indictment to include the ultimate punishment sought for the offenses, no reason existed for the grand jury to even know what that punishment may be"); U.S. v. Haynes, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) (rejecting the defendant's attempt to "extend the meaning of the Indictment Clause beyond its Constitutional limits"); U.S. v. Matthews, 246 F. Supp. 2d 137, 147 (N.D. N.Y. 2002) ("Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination. The role of the grand jury simply is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary." (quotations and citations omitted)).

In view of the foregoing, we find that Defendant's Fifth Amendment indictment claim is without merit.

E.   Incomprehensibility of FDPA

Defendant next argues that the FDPA is unconstitutional because empirical studies show that jurors are unable to comprehend the FDPA's sentencing scheme, specifically the concepts of aggravating and mitigating factors and the different burdens of proof applicable to each. Therefore, Defendant argues, jurors are unable to make a

reasoned and informed choice between a death sentence and a life sentence. In response, the Government asserts that Defendant's claim is premature because the parties do not yet know the precise language of the Court's jury instructions. Second, the Government notes that jurors are presumed to follow the Court's instructions, and that no court has held that the jury instructions rendered the FDPA's statutory scheme to be incomprehensible.

The Court is unpersuaded by Defendant's argument for several reasons. First, the Gregg Court upheld a Georgia statute with a sentencing scheme much like that of the FDPA. See 428 U.S. 153. In so ruling, the Court recognized that

> [j]uries are invariably given careful instructions on the law and how to apply it before they are authorized to decide the merits of a lawsuit. It would be virtually unthinkable to follow any other course in a legal system that has traditionally operated by following prior precedents and fixed rules of law.

Id. at 193. Moreover, the Supreme Court has repeatedly emphasized, and the Government correctly notes, that "juries are presumed to follow their instructions." Zafiro v. U.S., 506 U.S. 534, 541 (1993) (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)). Finally, Defendant has failed to provide any jurisprudential or statutory authority directly supporting his proposition; instead, he relies on two empirical studies of jurors in capital cases. Courts considering similar studies to those proffered by Defendant have found them insufficient to establish that the FDPA's sentencing scheme is so incomprehensible as to render it incapable of clarification and precision through the crafting of proper jury instructions. See U.S. v. Davidson, 2003 WL 1837701, at *12 (E.D. La. April 9, 2003) (collecting cases).

Based on the foregoing, we believe that the jury can be adequately instructed so it will understand and appropriately apply the FDPA's provisions. Counsel for both parties will be given the opportunity to review and object to the Court's jury instructions. Accordingly, we reject Defendant's claim that the FDPA is unconstitutional because of an incomprehensible sentencing scheme.

### F. Risk of Executing Innocent Defendants Renders Death Penalty Unconstitutional

Defendant also argues that the federal death penalty is unconstitutional because it results in death sentences for the factually and legally innocent, thereby creating an unacceptable risk of executing innocent defendants. Yet, neither the Supreme Court nor the Fifth Circuit has so held. In fact, the federal district court decision upon which Defendant relies has since been reversed by the Second Circuit, which indicated the Supreme Court has repeatedly considered and rejected the argument that the death penalty is impermissible because innocent people may be executed. See U.S. v. Quinones, 313 F.3d 49 (2d Cir. 2002), rev'g, 205 F. Supp. 2d 256 (S.D. N.Y. 2002). Moreover, the Fifth Circuit teaches that a defendant "cannot invalidate [a] statute on the ground that it might conceivably be applied to reach an unconstitutional result in some other defendant's case." Robinson, 367 F.3d at 290 (citing U.S. v. Salerno, 481 U.S. 739, 745 (1987)). For these reasons, Defendant's fifth contention is without merit.

### G. Death Penalty is *Per se* Cruel and Unusual Punishment and a Denial of Due Process

Finally, Defendant argues that the death penalty is unconstitutional in all circumstances. The Fifth Circuit expressly rejected this argument in U.S. v. Jones, 132

F.3d 232, 242 (5th Cir. 1998), stating: "We are bound by Supreme Court precedent which forecloses any argument that the death penalty violates the Constitution under all circumstances." (citing McCleskey, 481 U.S. at 300–03; Gregg, 428 U.S. 153). Likewise, the Supreme Court recently noted that

> [r]easonable people of good faith disagree on the morality and efficacy of capital punishment, and for many who oppose it, no method of execution would ever be acceptable. . . [But] [t]his Court has ruled that capital punishment is not prohibited under our Constitution. . . Throughout our history, whenever a method of execution has been challenged in this Court as cruel and unusual, the Court has rejected the challenge.

Baze v. Rees, 553 U.S. 35, 62 (2008). Accordingly, we reject Defendant's final claim.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss "Notice of Special Findings" in Superseding Indictment and to Strike Notice of Intent to Seek the Death Penalty (Doc. 156) will be **DENIED**. Disposition will enter by a separate order signed on this date.

SIGNED on this 3rd day of July, 2014, at Alexandria, Louisiana.

_____
DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT