RECEIVED
AUG 15 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 10-00351 |
| -vs- | JUDGE DRELL |
| THOMAS STEVEN SANDERS | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a "Motion *in Limine* to Exclude Evidence of Sue Ellen Roberts's Death in the Guilt Phase of Trial" (Doc. 215), and a "Motion *in Limine* to Exclude Irrelevant, Prejudicial, Unreliable and Hearsay Evidence and Information" (Doc. 216) filed by Defendant, Thomas Steven Sanders. The United States ("the Government") filed a response to each and both motions are ripe for disposition. (See docs. 223 and 225). For the following reasons, Defendant's motions will be **DENIED**.

I.   Background

Defendant is charged in the two-count superceding indictment (Doc. 25) with interstate kidnapping resulting in death under 18 U.S.C. § 1201(a)(1) as well as carrying/using a firearm in relation to a crime of violence and causing the death of another through the use of a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A) & (j)(1). The superceding indictment also includes a Notice of Special Findings listing four allegations of intent under 18 U.S.C. § 3591(a)(2)(A)-(D) and three statutory aggravating factors under § 3592 that make Defendant eligible for the death penalty. Jury selection is scheduled to begin on August 18, 2014. (Doc. 146).

II. <u>Law and Analysis</u>

A. <u>Motion *in Limine* to Exclude Evidence of Sue Ellen Roberts's Death in the Guilt Phase of Trial</u> (Doc. 215)

The Defendant moves to exclude evidence of Suellen Roberts'[1] death in the guilt phase of trial for two reasons: (1) Defendant contends this evidence is extrinsic evidence of "other crimes" and inadmissible under Rule 404 (b) of the Federal Rules of Evidence ("Rule 404 (b)"); and (2) Defendant contends the evidence of Suellen's death is unfairly prejudicial and the prejudice outweighs its probative value under Rule 403 of the Federal Rules of Evidence ("Rule 403"). (<u>See</u> doc. 215-1 at 1–2). The United States contends the evidence is intrinsic, making Rule 404 (b) inapplicable, and the evidence is highly probative and not unfairly prejudicial under Rule 403. (<u>See</u> doc. 223 at 3–8).

*1. "Other Crimes" Evidence under Rule 404*

Defendant argues in support: "[t]he admission of the circumstances surrounding the killing of [Suellen] Roberts creates an undue risk that the jury would view such evidence in a vein that would result in a conviction based primarily on other crimes evidence." (Doc. 215-1 at 2). Contrarily, the Government contends the evidence concerning Suellen Robert's death is intrinsic and "inextricably intertwined with the crime of kidnapping charged in the superceding indictment." (Doc. 223 at 3).

Federal Rule of Evidence 404 (b) (1) states: "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular

---

[1] The Defendant refers to "Sue Ellen Roberts" while the Government uses a different spelling: "Suellen Roberts." (<u>Compare</u> Doc. 215-1 <u>with</u> Doc. 223). The Court will use "Suellen Roberts" in this ruling for consistency because this spelling was utilized in the "Notice of Intent to Seek the Death Penalty." (Doc. 73 at 3).

occasion the person acted in accordance with the character." Whether Rule 404 (b) applies depends on whether evidence is intrinsic or extrinsic to the case. Rule 404 (b) only proscribes the admissibility of extrinsic evidence and does not apply to intrinsic evidence of the crime charged. United States v. Carrillo, 660 F.3d 914, 926–28 (5th Cir. 2011) (citing United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994) (stating that "[a]n act is not extrinsic, and Rule 404 (b) is not implicated, where the evidence of the act and the evidence of the crime charged are inextricably intertwined.")). The Fifth Circuit has cogently explained the difference between intrinsic evidence and extrinsic evidence as follows:

> To determine whether "other acts" evidence was erroneously admitted, we must first decide whether the evidence was intrinsic or extrinsic. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." United States v. Williams, 900 F.2d 823, 825 (5th Cir. 1990). Intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place," United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996), and to "evaluate all of the circumstances under which the defendant acted," United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989). Intrinsic evidence does not implicate rule 404(b), and "consideration of its admissibility pursuant to [that rule] is unnecessary." United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994).

United States v. Rice, 607 F.3d 133, 141 (5th Cir. 2010).

In the case at bar, Suellen's death is inextricably intertwined with Lexis' kidnapping. Both events occurred at the same time, in the same place, and are part of a single criminal episode. Mr. Sanders allegedly kidnapped Lexis immediately after shooting Suellen Roberts with a firearm in a remote area in Arizona in Lexis' presence. The location, time, and circumstances surrounding Suellen's death are essential to put

Lexis' kidnapping in context. The jury must know about Suellen's death to evaluate the circumstances under which the charged crime was allegedly committed.

Furthermore, the Government bears the burden of proving that the Defendant unlawfully held the victim "for ransom or reward or otherwise." 18 U.S.C. § 1201 (a). After requested by defense counsel and ordered by the Court, the Government filed a bill of particulars listing potential purposes and benefits the Defendant derived from the alleged kidnapping. (See doc. 194). Pertinent to this motion, the Government contends Mr. Sanders unlawfully held Lexis because she was the "only eyewitness to the defendant shooting her mother in the head and killing her." (Doc. 194 at 1). The Government argues that excluding evidence about Suellen's death would "automatically eliminate a possible purpose or benefit of the kidnaping from the jury's consideration." (Doc. 223 at 6). We agree, and find the evidence of Suellen's death is intrinsic and cannot be sensibly separated. This critical evidence is necessary to place the alleged criminal act in context for the jury and allow the prosecution to present its case.

If extrinsic, evidence may nevertheless be admitted if used for another purpose such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404 (b) (2). While we find this evidence to be intrinsic, even if it was not intrinsic, it would be admissible to prove intent, motive, and opportunity pursuant to Rule 404 (b) (2).

*2. Prejudice under Rule 403*

Defendant also argues the evidence of Suellen's death is overly prejudicial and should be excluded under Rule 403 of the Federal Rules of Evidence ("Rule 403"). (Doc.

215-1 at 2). Defendant contends the "district court has authority to exclude evidence under 403 in the guilt phase because of its impact on the penalty phase." (Id. citing U.S. v. Pepin, 514 F.3d 193 (2d Cir. 2008)). Furthermore, Defendant contends admission of this evidence would create confusion on the issues, and mislead the jury. (Doc. 215-1 at 2). The Government disagrees, and argues the evidence is probative and not unfairly prejudicial to the Defendant under Rule 403. (Doc. 223 at 6–8).

Rule 403 gives the court discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unique to a capital trial, the standards for the admissibility of evidence in the guilt phase differ from the penalty phase. The admissibility of evidence during the guilt phase of trial is governed by Rule 403, explained *supra*, but during the penalty phase, the admissibility of evidence is governed by The Federal Death Penalty Act in 18 U.S.C. § 3593 (c) ("FDPA"). Pepin, 514 F.3d at 207. The two salient differences between the language of Rule 403 and the FDPA are: (1) Rule 403 requires that probative value be substantially outweighed by danger of unfair prejudice before evidence may be excluded, whereas FDPA omits this substantially requirement and directs that exclusion may result if scales tip, even slightly, in favor of unfair prejudice; and (2) FDPA makes no express mention of factors of undue delay, waste of time, and cumulativeness as grounds for exclusion. Compare Fed. R. Evid. 403 with 18 U.S.C. § 3593 (c).

In Pepin, the district judge excluded evidence of the dismemberment of the victims during the guilt phase and penalty phase of a capital murder trial.[2] 514 F.3d at 206–07. The trial court judge apparently was concerned that the evidence of dismemberment of the victims during the guilt phase would carry over to the penalty phase and could be overly prejudicial to the penalty phase of trial. Id. at 207. The Second Circuit Court of Appeals found that it was an error of law and an abuse of discretion "to exclude[] evidence from the guilt phase solely because it was excluded at the penalty phase." Id. The Circuit Court reasoned that "[t]o rule that only evidence independently admissible at the penalty phase is admissible during the guilt phase, however, would impermissibly allow the section 3593 (c) admissibility standard to govern evidentiary rulings not only at the penalty phase, but throughout the entire proceeding." Id. The Second Circuit held the evidence of the defendant's calmly dismembering the victim's body shortly after the killing proved the killing was not accidental and also helps to prove the defendant's intent: "The precise manner in which the defendant disposed of the bodies – using a knife and drawing on his skill as a butcher to cut at the joints – suggests not a panicked reaction to accidental death but a considered effort to hide a criminal act." Id. at 208. Lastly, the Court of Appeals said that these "details form part of the *res gestae*, the narrative that the government rightly seeks to tell at the guilt phase of the trial." Id. (citing Old Chief v. United States, 519 U.S. 172, 189 (1997) (saying in part, "[p]eople who

---

[2] The district court also excluded evidence of the defendant's having allegedly committed child abuse. 514 F.3d at 199. The court reasoned this evidence was irrelevant to the defendant's murder charges, and the danger of prejudice substantially outweighed the probative value. Id. at 198–200. The Second Circuit Court of Appeals affirmed this determination and found no abuse of discretion. Id. at 206. We focus on the evidence of dismemberment as it is more analogous to the instant case than the evidence of alleged child abuse.

hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters")).

While the Court appreciates that the evidence sought to be introduced may be "prejudicial" to the Defense, it is prejudicial because it is highly probative. As in Pepin, evidence of Suellen's death helps prove intent as well as motive, opportunity, and lack of accident. Similarly, Mr. Sander's kidnapping of Lexis after shooting her mother will likely show the kidnapping was a "considered effort to hide a criminal act." 514 F.3d at 208. To repeat the Government's credible argument, "evidence of the death of Suellen Roberts is highly probative: her death and the kidnapping of her child were the product of a single criminal episode, occurred at the same place and time, and evidence of the former is essential to understanding the latter." (Doc. 223 at 6). The Government is entitled to tell the story of Lexis' kidnapping in context without bizarre and nonsensical gaps in the narrative. Therefore, Defendant's motion in limine to exclude evidence of Suellen Robert's death will be **DENIED**.

### B. Motion *in Limine* to Exclude Irrelevant, Prejudicial, Unreliable and Hearsay Evidence and Information (Doc. 216)

Defendant broadly moved to any exclude references to past misdemeanor convictions and any evidence of the Defendant's committing or discussing sexual misconduct, rape, theft, domestic abuse, domestic violence, and arson. (Doc. 216-1 at 8–10). The Government has responded that it does not intend to offer evidence of Mr. Sanders' past misdemeanor convictions in its case during the guilt or penalty phase.

7

(Doc. 225 at 1–2).[3] However, the United States says it does plan to have a man named Alfred Priore, a former co-worker of Mr. Sanders, testify during the trial about sexual misconduct by the Defendant. (Id. at 2).

The Defense globally argues evidence of Mr. Sanders having engaged in, or talking about engaging in, sexual misconduct in the guilt phase is irrelevant under Rule 404 (b), irrelevant to any statutory or non-statutory aggravating factor noticed by the Government, unreliable and inadmissible hearsay, and that any probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, and misleading the jury under Rule 403. (Doc. 216-1 at 10). For the reasons explained *infra*, Defendant's arguments are not persuasive.

The Government's proposed witness, Alfred Priore, is said to have worked with Mr. Sanders at Pacific Mini Storage in Las Vegas, Nevada. (Doc. 225 at 2). Mr. Priore is expected to testify about his personal relationship with Mr. Sanders, and his direct observations of Mr. Sanders with both Suellen and Lexis Roberts. (Id.). Mr. Priore will also testify about statements made by the Defendant regarding sexual misconduct with minors as well as his sexual relationship with Suellen Roberts. (Id.). According to the Government's filings, for example, Mr. Priore shared with a detective in the investigation the following conversation he had with Mr. Sanders:

> He [defendant] made comments like, um, well, Al, the way you want to, what you want to do is get yourself a young girl around 12, it is always like 12, he would say. And you have to raise her right. You'd take her up to the mountains. You'd take her somewhere, and you, you train her to, to do things right your way, and,

---

[3] The Government acknowledged that whether Mr. Sander's misdemeanor convictions will become relevant to rebut or refute evidence presented by the Defendant during the trial is unknown until the Defendant presents his case. (Doc. 225 at 1–2). The Court agrees and declines to address that possibility here.

ah, I'd just look at him and go, "Dude, you got, you got a problem," I'd say, or, I go, "You're really," I go, "You're a sick fucker." This is what I said to him exactly. And he'd turn to me, and he goes, "You don't know how sick I really am."

(Doc. 225 at 2–3 (citing Doc. 225-1 at 35)).

While the Defense claims this evidence is irrelevant, we find testimony about Mr. Sanders and his relationships with Suellen and Lexis are highly relevant to the case – evidence explaining the connection between Mr. Sanders and his alleged victim is at the very heart of this case. Furthermore, although the Defense contends this evidence is inadmissible hearsay, any statements made by Defendant are explicitly not hearsay and admissible as an opposing party's statement under the Federal Rules of Evidence. See Fed. R. Evid. 801(d)(2)(A).

Statements about Mr. Sander's sexual misconduct with young girls is also relevant to show Mr. Sanders may have kidnapped Lexis for sexual fantasy or gratification. (See Doc. 225 at 3–4). Defendant argues evidence of sexual misconduct is prohibited as "other crimes" evidence under Rule 404 (b) but, as discussed *supra*, the United States has the burden to prove the Defendant held the victim "for reward or otherwise." See 18 U.S.C. § 1204 (a) (1). Regardless of whether any or all of this evidence is intrinsic or extrinsic under Rule 404, it is admissible to show intent, motive, opportunity, and lack of accident under Rule 404 (b).

When weighing the probative value of this evidence with the danger it may prejudice the Defendant under Rule 403, the Court is cognizant that most relevant evidence is prejudicial to the Defendant. While prejudicial, this evidence is not <u>unfairly</u> prejudicial, and it is definitely probative to show Defendant's possible motives for

allegedly kidnapping Lexis Roberts. Therefore, Defendant's motion *in limine* to exclude evidence of Mr. Priore's testimony will be **DENIED**.

### III.  Conclusion

For the foregoing reasons, Defendant's "Motion *in Limine* to Exclude Evidence of Sue Ellen Robert's Death in the Guilt Phase of Trial," (Doc. 215) and his "Motion *in Limine* to Exclude Irrelevant, Prejudicial, Unreliable and Hearsay Evidence and Information" (Doc. 216) will be **DENIED** in a separate order issued on this date.

SIGNED on this 15th day of August, 2014 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT