RECEIVED
IN ALEXANDRIA, LA.

AUG 2 5 2014

TONY R. MOORE, CLERK
                DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET NO. 10-00351 |
| -vs- | JUDGE DRELL |
| THOMAS STEVEN SANDERS | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is a Motion to Strike Petit Jury Venire and Renewed Motion to Strike Grand Jury Indictment (Doc. 209) filed by Defendant, Thomas Steven Sanders. For the following reasons, Defendant's motion will be **DENIED**.

I.  **Background**

On January 26, 2011, a grand jury returned a two-count superseding indictment charging Defendant with interstate kidnapping pursuant to 18 U.S.C. § 1201(a)(1), and carrying/using a firearm in relation to a crime of violence and causing the death of another through the use of a firearm pursuant to 18 U.S.C. § 924(c)(1)(A) and (j)(1). (Doc. 25). The superceding indictment (as recently modified, See Doc. 195) also includes a Notice of Special Findings listing four allegations of intent and three statutory aggravating factors under 18 U.S.C. §§ 3591 and 3592, the Federal Death Penalty Act. Defendant was arraigned on the superseding indictment on February 11, 2011, and entered pleas of not guilty to both counts. (Doc. 30). The United States of America ("Government") then filed a Notice of Intent to Seek the Death Penalty pursuant to the indictment on August 1, 2012. (Doc. 73).

Approximately 400 potential jurors were summoned to complete a preliminary juror questionnaire for the present case. The procedures used to select these potential jurors are set out in the Jury Plan for the United States District Court Western District of Louisiana (Amended 2/22/13) ("Jury Plan"), which is designed to select grand and petit jurors from a fair cross-section of the community, and provides for the creation of a master jury wheel in each of the five court divisions drawn at random from the voter registration lists of each parish in the division. (Jury Plan, ¶¶ 1, 4(1)). Once the master jury wheel is created for a particular division, the Clerk of Court ("Clerk") draws a certain number of names, at random, and mails to those individuals a juror-qualification form to determine their eligibility for service under 28 U.S.C. § 1865(b).[1] (Id. ¶ 5(1)–(2)). The names of the individuals "drawn from the master jury wheel who are determined [by the Court] to be qualified as jurors and not exempt or excused" are then placed on a resulting qualified jury wheel, from which both grand and petit jurors are selected. (Id. ¶¶ 5(3), 9). The Jury Plan also provides that the jury wheels be emptied and refilled every four years. (Jury Plan, ¶¶ 5(4), 16). The applicable Western District Jury Plan was

---

[1] Under 28 U.S.C. § 1865(b), a person is eligible to serve as a grand or petit juror, unless he:
(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district;
(2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form;
(3) is unable to speak the English language;
(4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or
(5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.

approved by the Reviewing Panel of the U.S. Fifth Circuit Court of Appeals on February 21, 2013.

In this case, the potential petit jurors were drawn from a master jury wheel that was filled in October 2011, and were selected only from the Alexandria Division. According to the February 24, 2012 AO12 "Report on Operation of the Jury Selection Plan" for the October 2011 master jury wheel ("AO12 Report"), the percentage of African Americans in the citizen population of the Alexandria Division is 29.4%, while the percentage of African Americans on the master jury wheel for that division is 27.83%. (Gov. Exh. 1). The AO12 Report further reveals that the percentage of African Americans on the qualified jury wheel for the Alexandria Division is 18.12%. (Gov. Exh. 3).

Defendant previously filed a motion to dismiss the indictment based upon the systematic exclusion of African Americans from the grand jury venire (Doc. 147), which motion this Court denied after oral argument (Docs. 181, 182). In so ruling, we concluded that "Defendant has failed to make out a case of jury discrimination, . . . has failed to show that the exclusive use of voter registration lists results in the systematic exclusion of African Americans from the Court's jury venire," and "has also failed to show that the use of voter registration lists has a substantial impact on the composition of the average grand jury." (Doc. 181 at p. 13).

On July 15, 2014, Defendant filed the instant "Motion to Strike Petit Jury Venire due to the Systematic Exclusion of African-Americans and Citizens Eighteen to Twenty-One Years of Age from the Venire and Renewed Motion to Strike Grand Jury Indictment Based on Systematic Exclusion of Minorities Over Time" (Doc. 209). All appropriate

responsive briefing has been filed (Doc. 235), and disposition of the motion is now appropriate.[2] After carefully considering the filings and evidence in the record and the parties' arguments contained in their briefs, the Court rules as follows:

## II. Law & Analysis

In the present motion, Defendant objects to Court's jury-selection process as violating the Sixth and Twenty-Sixth Amendments to the U.S. Constitution and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* ("JSSA" or "the Act"),[3] in its alleged exclusion of two groups: African Americans and citizens between the ages of 18 and 21.

### A. Underrepresentation of African Americans

First, Defendant argues that the use of voter registration lists as the exclusive source of potential jurors produces a substantial underrepresentation of African Americans in the jury venire by an absolute disparity of more than 10%.[4] Defendant

---

[2] In a prior telephone conference with counsel for both parties, the Court instructed counsel to notify the Court via letter if either party desired oral argument on motions filed in this case. Given that neither party has submitted a written request for oral argument per the Court's instructions, we proceed based on the briefing and record presently before us.

[3] Defendant's motion also references the Fifth, Eighth, Tenth, and Fourteenth Amendments to the U.S. Constitution. However, in our previous ruling on Defendant's motion to dismiss, we rejected a Fifth Amendment claim based upon Defendant's failure to present evidence "that African Americans were underrepresented over a period of time, or that the Court's Jury Plan provides an opportunity to discriminate against African Americans." (Doc. 181 at p. 10). With respect to the current motion, Defendant has again failed to prove or even allege purposeful discrimination in the jury-selection process. See Castaneda v. Partida, 430 U.S. 482, 493 (1977); U.S. v. Brummitt, 665 F.2d 521, 527 (5th Cir. 1981). Defendant has also failed to present any evidence or argument in support of an Eighth, Tenth, or Fourteenth Amendment claim. Accordingly, we will not formally address these issues, and those claims will be denied.

[4] Defendant proposes several different calculations in the present motion. For example, he compares the percentage of African Americans in the citizen population of the Alexandria Division (29.4%) to the percentage of African Americans on the qualified jury wheel of the

therefore believes the Court should supplement voting lists with additional sources to obtain jury venires that more accurately reflect the racial composition of the Alexandria Division.

1. *Sixth Amendment*

The Sixth Amendment guarantees a criminal defendant the right to a jury randomly selected from a fair cross-section of the community.[5] U.S. v. Alix, 86 F.3d 429, 434 (5th Cir. 1996) (citing Taylor v. Louisiana, 419 U.S. 522, 537 (1975)). Thus, "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Taylor, 419 U.S. at 538. To establish a prima facie violation of the fair cross-section requirement, a defendant must satisfy the three-part test set forth by the Supreme Court in Duren v. Missouri:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of

---

Alexandria Division (18.12%), which results in an absolute disparity of 11.28%.(See Doc. 209-1 at p. 2). Then, using the same 29.4% population figure from AO12 Report, Defendant calculates that African Americans were underrepresented in the group of persons returning juror qualification forms (16.59%) by an absolute disparity of 12.81%. (See Doc. 209-1 at p. 2, 5). Defendant also contends that "minorities" are substantially underrepresented in the jury venire by an absolute disparity of 13.03%, but it is unclear how Defendant arrived at this figure. (See Doc. 209-1 at p. 5). Finally, Defendant introduced evidence by affidavit claiming that African Americans are underrepresented on the qualified jury wheel of the Alexandria Division by an absolute disparity of 11.17%. (See Affidavit of Jeffrey O'Neal Martin, Doc. 209-2 at p. 4).

[5] This is true regardless of the particular defendant's race. See Peters v. Kiff, 407 U.S. 493, 504 (1972) (holding that "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law"). Defendant Sanders is Caucasian.

5

such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. 357, 364 (1979).

The Fifth Circuit has held that African Americans are a sufficiently distinctive group for Sixth Amendment purposes. See McGinnis v. Johnson, 181 F.3d 686, 689 (5th Cir. 1999). Thus, Defendant's contention that African Americans were underrepresented in the venires from which his grand and petit juries were selected satisfies the first element of Duren. As to the second and third elements, however, Defendant's claim fails.

The accepted methodology for determining the severity of a minority group's underrepresentation on jury panels is to measure the "absolute disparity" between the proportion of jury-eligible members of a distinctive group in the relevant community and its representation in jury venires for that same community. See U.S. v. Garcia, 121 F.3d 704, *4 n.10 (5th Cir. 1997); U.S. v. Maskeny, 609 F.2d 183, 190 (5th Cir. 1980).[6] Both parties rely on the February 24, 2012 AO12 Report, which shows that African Americans make up 27.83% of the October 2011 master jury wheel for the Alexandria Division and 29.4% of the total citizen population in the Alexandria Division, resulting in an absolute disparity of only 1.57%. The Fifth Circuit has consistently recognized that absolute disparities of 10% or less are insufficient to satisfy the second prong of Duren. See Garcia,

---

[6] Although the affidavit of Jeffrey O'Neal Martin discusses other statistical methodologies, such as comparative disparity and standard deviation, the Fifth Circuit has stated: "[I]n cases where 'there is no other evidence other than statistics to show a violation of the fair-cross-section requirement, absolute disparity is an appropriate yardstick by which to measure the severity of minority's under representation.'" U. S. v. Yanez, 136 F.3d 1329, *2 (5th Cir. 1998).

6

121 F.3d 704 at *4; Maskeny, 609 F.2d at 190; U.S. v. Butler, 615 F.2d 685, 686 (5th Cir. 1980).

Furthermore, while the qualified jury wheel for the Alexandria Division consists of 18.12% African Americans, resulting in a disparity of 11.28%, the Fifth Circuit in U.S. v. Quiroz, 137 F. App'x 667 (5th Cir. 2005), found a discrepancy of 11.22% between the number of jury-eligible Hispanics and those in the federal jury pool, which was drawn exclusively from voter registration lists, insufficient to establish a prima facie case of underrepresentation. In so ruling, the court stated:

> Given the disparity of 11.22%, we agree with the district court that [d]efendants failed to prove their prima facie case of a 6th Amendment fair cross-section violation because they are unable to demonstrate that the disparity is more statistically significant than the 11% disparity which this [c]ourt found insufficient to sustain a claim of racial discrimination in Thompson v. Sheppard, 490 F.2d 830 (5th Cir. 1974). . . . [W]e decline to find that a disparity of 11.22% is significant where one of 11% is not.

Id. at 670. Here, Defendant does not allege, much less offer proof, that an absolute disparity of 11.28% is more statistically significant than the 11.22% disparity in Quiroz. Thus, Defendant fails to satisfy the second prong of the Duren test.

But even if we assume an 11.28% disparity is statistically significant, Defendant also fails to show that the cause of underrepresentation is systemic, or "inherent in the particular jury-selection process utilized." Duren, 439 U.S. at 366. Defendant argues that African Americans were underrepresented in the venires from which his grand and petit juries were selected "and in every grand and petit jury selected since at least 2007, when the list of registered voters used to select his grand jury was procured from the Louisiana Secretary of State." (Doc. 209 at pp. 3–4). However, in our previous ruling, we

found that Defendant's statistical evidence was insufficient to establish the underrepresentation of African Americans in his grand jury venire, and ruled that the grand jury selection in this case comported with the Fifth and Sixth Amendments and the JSSA. We also rejected Defendant's claim that African Americans are systematically excluded from the jury-selection process by the use of voter registration lists as the exclusive source of potential jurors, reasoning as follows:

> [I]n U.S. v. Yanez, 136 F.3d 1329 at *2, the Fifth Circuit rejected a similar argument "absent proof that obstacles were placed in the path of minorities attempting to register to vote or to vote." The Yanez court further noted that the JSSA "expressly provides for the use of voter registration lists. Such lists may be used as the *sole source* for selecting jury pools." Id. (emphasis added).
>
> In the present case, the only "obstacle" to minority voter registration Defendant mentions is the State of Louisiana's failure to ensure voter registration at state offices providing public assistance, which is the subject of United States v. Louisiana, No. 3:11-cv-00470 (M.D. La. July 12, 2011) (Doc. 125, Exh.1). Yet, the Government contends this lawsuit is irrelevant to the present case because the complaint is limited to violations of the National Voter Registration Act of 1993, 42 U.S.C. §§ 1973gg, *et seq.* & 28 U.S.C. § 2201, and not the Sixth Amendment, and because it makes no allegations or claims regarding race disparity or any identifiable minority group. While we observe that the Government's current position seems contradictory to its arguments in the Middle District case, we find Defendant's evidence insufficient to establish systematic exclusion under the third prong of Duren.

(Doc. 181 at p. 8). Moreover, the Fifth Circuit has recognized that "[m]erely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case." Timmel v. Phillips, 799 F.2d 1083, 1086 (5th Cir. 1986) (citations omitted). For these reasons, we conclude that Defendant has

8

failed to establish a prima facie violation of the Sixth Amendment's fair cross-section requirement.

### 2. Jury Selection and Service Act

The JSSA provides that all federal court litigants "entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes," and it prohibits the exclusion of citizens from grand or petit jury service based on "race, color, religion, sex, national origin, or economic status." 28 U.S.C. §§ 1861, 1862. According to the Fifth Circuit, the Act

> authorizes the adoption of a jury plan based on the selection of potential jurors exclusively from the voter registration lists, 28 U.S.C. § 1863(b)(2). However, the statute itself provides that the plan shall specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters of the political subdivisions within the district or division. The plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title.

Brummit, 665 F.2d at 528 (quoting 28 U.S.C. § 1863(b)(2)).

To obtain relief under the JSSA, Defendant must show "a 'substantial failure' to comply with the Act's provisions, a substantial failure being one that destroys the random nature or objectivity of the selection process." U.S. v. Olaniyi-Oke, 199 F.3d 767, 772 (5th Cir. 1999) (citations omitted); see also 28 U.S.C. § 1867(a). Mere "[t]echnical violations that do not affect the random nature or objectivity of the selection process do not constitute a substantial failure to comply." Garcia, 121 F.3d 704 at *4 (citation

omitted). The Fifth Circuit has provided the following summary of the jurisprudence governing similar statutory challenges under the JSSA:

> This [c]ourt in United States v. Davis, 546 F.2d 583, 589 (5th Cir. 1977), Cert. denied, 431 U.S. 906, 97 S. Ct. 1701, 52 L. Ed. 2d 391 (1977), stated, "Determining the substantial compliance question requires that the alleged violations of the Act be weighed against the goals of the statute." The [c]ourt identified the major goal of the statute as the random selection of juries from a fair cross-section of the community; toward that end voter lists are to be the primary source of jurors' names and disqualifications, excuses, exemptions, and exclusions are to be based solely on objective criteria, Id. The [c]ourt then held that one aspect of the selection process there under review constituted a technical violation of the statute but that the violation in no way affected the random nature or objectivity of the selection process and therefore did not constitute a substantial failure to comply with the statute. In United States v. Goff, 509 F.2d 825 (5th Cir. 1975), Cert. denied, 423 U.S. 857, 96 S. Ct. 109, 46 L. Ed. 2d 83 (1975), this [c]ourt stated that to sustain a statutory challenge to grand jury selection procedures, a defendant must show the impact of an absolute disparity on the jury list. Specifically, although a group might be 47.73% underrepresented on a voter registration list, at most this disparity would result in 1.4 fewer persons on a twenty-three person grand jury than if the group's percentage of the population of the community (there 10.51%) were mirrored on a grand jury. This potential impact on a grand jury was held not to be so substantial as to require a supplementation of voter registration lists with other sources for grand jurors. Id. at 827.

Maskeny, 609 F.2d at 191. In Maskeny, the Fifth Circuit rejected a JSSA challenge based on the failure to supplement voter registration lists with additional juror sources because the appellants failed to show "either that the use of voter registration lists ha[d] a substantial impact on the composition of the average grand jury or that their use result[ed] in the systematic exclusion of a cognizable group from jury source." Id. at 192.

For the reasons discussed above and in our previous ruling on Defendant's motion to dismiss, we find that "Defendant has failed to make out a case of jury discrimination, and has failed to show that the exclusive use of voter registration lists results in the

systematic exclusion of African Americans from the Court's jury venire." (Doc. 181 at p. 13). Defendant has also failed to show that the use of voter registration lists had a substantial impact on the composition of his own grand or petit jury, much less on the composition of the average grand or petit jury. Finally, Defendant has not explained how a jury-selection system based upon additional source lists would produce a jury wheel that would be more reasonable than that generated under the current system. In fact, the Fifth Circuit has observed that "with the one obvious exception that citizens who are unable to read, write, and speak English can vote but cannot serve as jurors, the qualifications needed to vote and to serve on juries are substantially similar." Garcia, 121 F.3d 704 at *6. Therefore, Defendant's Jury Act challenge has no merit.

### B. Exclusion of Young Voters

Second, Defendant essentially alleges a failure to update the master jury wheel with voter registration lists secured at sufficiently frequent intervals to assure that jurors are drawn from a current cross-section of the community. In this regard, Defendant contends that the decision to refill the master jury wheel on a quadrennial basis results in the systematic exclusion of citizens between the ages of 18 and 21 and significantly reduces the percentage of African Americans in the jury venire. Defendant also observes that "[t]he plain result of the operation of the [J]ury [P]lan is that no one younger than twenty years, ten months old has an opportunity to serve as a petit juror in this case." (Doc. 209 at p. 4). However, Defendant's argument is foreclosed by the Fifth Circuit's decision in U.S. v. Gooding, 473 F.2d 425, 429–30 (5th Cir. 1973):

In Kuhn[, 441 F.2d 179 (5th Cir. 1971),] we approved as valid under the [JSSA] a five year interval for emptying and refilling the jury master wheel, the master list from which grand and petit jurors are drawn, and held a lag of one year and five months between the filling of the master wheel and the time of trial to be impervious to constitutional attack. In Pentado[, 463 F.2d 355 (5th Cir. 1972),] we held a three[-]year lag between the filling of the master wheel and trial to be constitutionally acceptable. In Blair[, 470 F.2d 331 (5th Cir. 1972),] we held the [d]istrict [c]lerk did not fail to comply with the [p]lan by not adding names to the master wheel on a continuing basis between the quadrennial emptying and refilling.

In part, appellant appears to make the same argument made in Blair—that the [p]lan required the [c]lerk to add names to the master wheel continuously, not only at quadrennial intervals, to maintain a current cross-section. Blair makes clear that the [p]lan contains no such requirement and disposes of this argument entirely. To the extent appellant bases his argument on statutory grounds Kuhn is dispositive. If the five year interval is valid under the Act, the three-and-one-third year time lag complained of here is necessarily also valid under the Act.

Nor do we believe appellant may rely on constitutional grounds. In Kuhn we held young voters aged twenty-one to twenty-three were not a cognizable group whose exclusion from jury service contravened the cross-section standard—that a time lag of one year and five months is constitutionally acceptable. In Pentado we approved a three-year lag. We do not hesitate to hold that the lag of three years and four months in this case is also acceptable. The court below was not obliged to hear evidence on this question for it could take judicial notice of the passage of time and the mathematically calculable effect of a given time lag in temporarily excluding certain qualified jurors from the opportunity for jury service. As noted above, the exclusions complained of on this appeal result not from purposeful discrimination, but from the orderly administration of the [p]lan. The [p]lan does temporarily bar certain new voters from jury service, whether or not they are young and whether or not they are Cuban-Americans. We do not believe the classes composed of (1) all those who have become eligible for jury service by attaining voting age within the last three years and four months and of (2) those Cuban immigrants who have become eligible for jury service by becoming citizens within the last three years and four months are such distinct groups that their temporary exclusion from jury service violates their statutory right to serve on juries or defendant's right to a fair trial.

Accordingly, we conclude that Defendant's jury-selection challenges fail on both Sixth Amendment and JSSA grounds.

III. <u>Conclusion</u>

Consistent with the foregoing reasons, Defendant's Motion to Strike Petit Jury Venire and Renewed Motion to Strike Grand Jury Indictment (Doc. 209) will be **DENIED**. Disposition will enter by a separate order signed on this date.

SIGNED on this 25th day of August, 2014, at Alexandria, Louisiana.

```
                                    _____
                                    DEE D. DRELL, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT
```

13